# Richmond.

## City of Richmond v. H. M. Wright.

December 5, 1928.

The opinion states the case.

*James E. Cannon* and *L. F. Cary*, for the plaintiff in error.

*Thomas I. Talley* and *George L. Oliver*, for the defendant in error.

McLemore, J., delivered the opinion of the court.

Writ of error to a judgment of the Circuit Court of the city of Richmond in favor of H. M. Wright, the plaintiff in that court. Both parties will be hereafter referred to as they were designated in the court below.

This is an action against the city growing out of the construction of an embankment along Carlisle avenue near its intersection with Government or National Cemetery road, over a natural water course, which plaintiff contended did not have a sufficient drain pipe under the embankment to carry off the water gathering into and passing down the ravine, on the edge of which was constructed the residence of plaintiff, and as a result of which the water, during a heavy rainfall, was dammed and backed up against and into his home, damaging his building, washing his land, and causing great inconvenience and annoyance; so great that it was necessary to remove his family (temporarily) from the damaged building to other quarters.

This case was before the court in 1926, and is reported in 146 Va. 835, 132 S. E. 707. On the first trial a plea of release was sustained on demurrer to it in the trial court, and plaintiff's motion dismissed. This judgment was reversed in this court and the case remanded for a trial upon the merits.

On the second trial the plaintiff contended that the outlet under Carlisle avenue was too small, and the city knew it was insufficient to take off the water when there was a heavy rain—unusual rain; that defendant's attention had been called to the fact about one year before the downpour of July 30th and August 1, 1923, when its insufficiency was demonstrated; and that while it was true that the rain of July 30th was almost unprecedented, yet the damage thereby caused was in part due to the defendant's negligence in permitting an insufficient culvert to remain under the street when

it had been proven in August, 1922, to be too small to properly carry off a heavy rainfall.

This was an eighteen inch pipe constructed in 1919, and was considered by the engineers who installed it, as sufficient at that time to serve the territory and the purposes for which it was intended. In 1926, the city replaced this pipe by one of forty-eight inches in diameter, which fact, however, the city contends should not be considered by the jury as showing or tending to show an admission on its part that the eighteen-inch pipe was inadequate.

There was testimony produced on the trial, which if accepted by the jury would have justified a finding that the culvert was too small, and that the city had sent its engineers to the scene and had an occular demonstration of the fact. On the other hand there was evidence, (1) that the pipe was ample in size, and that its failure to carry off the water was due to the accumulation at its intake of limbs, weeds, trash, tin cans and other debris gathered by the rush of the waters down the ravine, and (2) that the fall of water was of such unusual proportions as to amount to an act of God, for all of which the city was not responsible.

These conflicts presented questions for the determination of a jury upon proper instructions by the court.

Every element of the case was covered by the court's instructions which seem to us to have correctly stated the law and the issues to be determined.

There were twelve instructions granted by the court and to only one was there an exception taken, namely No. 12, relating to the measure of damages, which reads:

"The court instructs the jury that if they find for the plaintiff, then in assessing his damages they should take

into consideration the injury done to the plaintiff's property as a result of the defendant's negligence; the cost of repairing the damage done to his house; the loss of other property, if any, shown by the evidence to have been suffered by the plaintiff; any inconvenience, annoyance and discomfort suffered by him on account of said floods, which occurred on July 30th and August 1, 1923, and allow him such sum as under all the circumstances of the case you deem fair and proper, not to exceed, however, $2,000.00, the amount sued for."

The court also refused two instructions offered by the city, which read:

"Instruction A. The court instructs the jury that evidence of the enlargement of the culvert under Carlisle avenue made subsequent to the damages complained of is not to be considered as showing negligence, or as amounting to an admission of negligence.

"Instruction B. The court instructs the jury that in determining what size a culvert should be built, a city exercises a discretionary power and that if, in the judgment of its skilled engineers, a culvert is of sufficient size to drain the area required, then a city cannot be held liable for an undersized culvert unless it is shown by a preponderance of the evidence that experience has demonstrated that the culvert after being installed was inadequate so that the city had notice by experience that the culvert was inadequate."

Of the eleven instructions granted without objection, we here present one (evidently offered by the defendant city), because it so fully covers the issues raised in the case:

"Instruction No. 4. The court instructs the jury that a municipal corporation is not bound to do more in the construction and maintenance of its culverts than to

use ordinary care. It can only be required to construct its culverts so as to be safe and sufficient for ordinary conditions. It is not bound for damages arising from overflows from its culverts caused by extraordinary falls of rain. If, therefore, the jury believe from the evidence that the injury complained of in the plaintiff's notice of motion occurred on the evening of July 30, 1923, and on August 1, 1923, and further believe from the evidence that there was on July 30, 1923, in the city of Richmond in the territory drained by the culvert in the notice of motion mentioned, a great rainfall, out of the ordinary course of things, producing a great flood of water, and not an ordinary flood such as might reasonably be expected in this locality and climate and that by reason of such extraordinary flood said culvert was too small to carry off the water, or that trash, debris, tin cans, a piece of curb, and such other materials were brought down into the said culvert which choked, obstructed and stopped up said culvert so as to prevent it from carrying off the water thus accumulated and that said stoppage continued until August 1, 1923, without lack of reasonable and ordinary care on the part of the defendant, and that thereby the plaintiff's premises were flooded on July 30, 1923, and on August 1, 1923, as in the notice of motion alleged, then the city of Richmond is not liable for the damages complained of in the said notice of motion on account of said extraordinary flood—provided the jury shall believe from the evidence that it was an extraordinary flood. The court, however, tells the jury that it must appear in order to give immunity under the rule that the act of God is not only the proximate cause, but the sole cause of the injury complained of."

The objections urged to instruction No. 12 raise the

question of the right of a plaintiff in a suit for damages to property, to recover for "inconvenience, annoyance and discomfort suffered by him on account of said flood," in addition to the actual damages proved to have been done to the premises of the owner.

■ There are numerous instances in which mental suffering accompanied by some willful wrong—some vindictive act, or personal injury may be reckoned by the jury in making up its verdict in a given case—but we are cited to no authority where the doctrine has been applied in connection with damages to property as the result of ordinary negligence.

■ The notice of motion charges that the city was negligent in constructing and maintaining inadequate drainage, as a result of which "my house and lot situated at the southwest intersection of Government road and Carlisle avenue, in the city of Richmond was, on several occasions in the past eighteen months, flooded and injured as the result of heavy rains which should reasonably have been anticipated by the said city and its agents." The complaint does not set up as an element of damage, "inconvenience, annoyance and discomfort," but does allege that the plaintiff suffered "great inconvenience and loss," therefore it would seem not covered by the pleadings, unless the annoyances and discomforts referred to can be said to follow as the necessary and logical result of the flooding of plaintiff's land and residence.

Defendant contends that this language is in legal effect mental anguish, and as such cannot be considered in augmenting the damage to his property, to sustain which position the following authorities are relied upon:

"The rule of the common law, that damages for mental suffering are not allowable, save as incidental to a physical injury, and except in that class of cases

known as vindictive actions, came under review in the case of *Allsop* v. *Allsop*, 5 H. & M. Rep. 534. [157 English Reports (Reprint) 1292.] That was an action arising from an illness caused by slanderous words, and the court was unanimously of the opinion that the demurrer to the declaration should be sustained." *Connelly* v. *Western Union Tel. Co.*, 100 Va. 51, 40 S. E. 618, 56 L. R. A. 663, 93 Am. St. Rep. 919.

In *Davis* v. *Western Union Tel. Co.*, 46 W. Va. 48, 32 S. E. 1026, we have the law stated in the following language:

"A rule that is more consistent with recognized legal principles, and that is supported by better authority, is that mental suffering alone, and unaccompanied by other injury, cannot sustain an action for damages, or be considered as an element of damages. Anxiety of mind and mental torture are too refined and too vague in their nature to be the subject of pecuniary compensation in damages, except where, as in case of personal injury, they are so inseparably connected with the physical pain that they cannot be distinguished from it, and are, therefore, considered part of it."

Again in 8 Ruling Case Law, page 528, section 82, the law is stated as follows:

■ "Ordinarily injury to the feelings is not a proper element of damages in actions for injuries to property, or for its unlawful seizure and detention. As must be obvious, this rule obtains especially in those States where no recovery can be had for mental suffering unaccompanied by physical injury"—as in Virginia.

The reasons for the rule announced by these cases and by the text writers seem obvious. In ordinary civil actions for damages growing out of some negligent act or omission, unaccompanied by a wicked or vicious motive, the law undertakes to compensate the injured

party for the loss actually sustained, *i. e.*, endeavors to make him financially whole.

The party who seeks the court's aid under such circumstances, must carry the burden of showing in what particulars he has been injured, and some evidence tending to show the amount of the damages sustained. It is neither fair to the defendant nor should the jury be expected or permitted, to roam at random in the field of speculation, and with no better method of fixing the *quantum* of damage than an arbitrary guess, transfer the assets of one litigant into the pockets of another.

We quote again from Cardwell, J., in *Connelly* v. *Western Union Tel. Co., supra.*

■ "Damages such as are recoverable at law must not only be the proximate result of the act complained of, but must also be capable of definite ascertainment, or, to use the language of law writers and the decided cases, must be certain, definite, and not speculative in their character. Under this rule, damages for mental suffering alone, as an independent cause of action, were never allowed at common law."

■ Without attempting to decide how far a jury may go in their effort to compensate a plaintiff in actions of this character for "inconvenience, annoyance and discomfort suffered" where these elements of damage have been alleged in the declaration or motion, and evidence has been introduced of sufficient clearness to give the jury facts upon which to base their verdict, we can only observe that no attempt seems to have been made by the plaintiff in this case to show any pecuniary damage on this account, indeed there is nothing in the record that can furnish "the jury with the slightest aid in fixing the amount of damages that was suffered by the plaintiff for inconvenience, annoyance and discomfort."

■ There being no evidence on this phase of the case, we conclude that both the reason of the law, and the authorities as well, are in accord in supporting the position that the jury should not have been instructed in this case, that they could consider "any inconvenience, annoyance and discomfort suffered" by the plaintiff on account of the flooding of the house and lot, and that instruction No. 12 excepted to by the defendant, was therefore erroneous and seems clearly to have misled the jury into fixing the damages at $1,500.00, when the only damage shown to have been sustained by the plaintiff was $650.00.

■ The jury, however, upon proper instructions as to liability has found that the plaintiff is entitled to recover, and as the erroneous instruction goes only to the elements to be considered by them in arriving at their verdict, and as the amount of damages is clearly fixed by the record at $650.00, this court accepting the finding of the jury upon the question of liability as binding upon it, will here enter its judgment under section 6365 in favor of the plaintiff for $650.00 with costs, etc.

■ The refusal of the court to give instructions A and B asked for by the plaintiff in error, and heretofore referred to in this opinion, has been relied upon with commendable zeal as a reason for the reversal of the judgment in this case. There were no grounds of objection assigned to the court's refusal to give the instructions as required by Rule of Court 22 and for this omission it is earnestly contended that no consideration should be given to the exceptions, for which position *Universal Motor Company, Inc.* v. *Snow,* 149 Va. 690, 140 S. E. 653; *Coopersmith* v. *Mahoney,* 150 Va. 685, 143 S. E. 313; *Myers* v. *Bibee Grocery Company, Inc.,* 148 Va. 282, 138 S. E. 570, are relied upon.

In the eleven instructions given by the court, the jury was fully instructed upon every material issue involved. We think the city's rights were as fully protected as the law would justify, and whether Rule 22 excluded consideration of the error complained of or not, we are of opinion that no reversible error was committed in refusing the instructions.

*Judgment modified and affirmed.*