COALGATE CO. VS ISHERWOOD.

Opinion rendered September 26, 1907.

(104 S. W. Rep. 565).

1.  *Damages—Personal Injury.*

> In an action for injuries to an employe, where there is no proof of
> his earning capacity prior to the injury, nor of the time he was
> unable to perform his usual labor, nor of the expenses incurred
> as a consequence of the injury, and the evidence only showed
> that his working capacity was reduced one-half, and that his
> life expectance by the mortality tables was a designated
> number of years, he is only entitled to nominal damages.

.Error to the United States Court for the Central District
of the Indian Territory; before Justice T.C.Humphrey, November
10, 1905.

Action by Joseph Isherwood against the Coalgate Com-
pany. There was a judgment for plaintiff, and defendant
brings error. Reversed and remanded.

*C. S. Arnold* and *A. G. Moseley*, , for plaintiff in error.

*Redwin* and *Jones*, for defendant in error.

LAWRENCE, J. Plaintiff in error, on December 9, 1903,
was operating a coal mine. Defendant in error was therein
employed as a "rope rider," which required him to deliver
empty cars to the miners and take away and send to the surface
the loaded cars, which were drawn by a rope over railway
tracks in the main entry. This entry was 500 yards long,
from 8 to 6 feet wide, and from 6 to 4½ feet high, and was
upon an incline from the surface downward along the slope
of the vein of coal. The roof of the entry was supported by
timbers resting on niches cut in the coal. The defendant,
at the close of the day's work, was riding out of the mine on
the coupling between two of the loaded cars, and while passing
under a low place, where the roof was but 4½ feet high, the

roof's support gave way and rock and slate fell upon him. He alleges in his complaint that he was thereby "wounded, cut, bruised, mashed, broken, and injured upon hips, legs, arms, back, chest, head, and neck," causing him great pain, loss of time from his usual employment, diminishing his ability to work and earn wages causing him an expense of $100 for medical attention and nurse hire, and permanently injuring him. He therein charged that the cause of the injuries was the negligent failure of the plaintiff to provide two slopes or outlets for going into and out of the mine, and to provide defendant with a reasonably safe way to and from his work, and in which to perform his work, and negligently failed to retimber the roof of said entry at the point where he was injured, and has permitted the timbers supporting the said roof to become sagged six inches, and thereby the roof fell upon the defendant and caused the injuries of which he complains; that said defects and weakness of said timbers were then well known to plaintiff. Defendant further alleges that the pit boss of the mine assured him before the injury that the defective roof and timbers would be repaired, and because of such promise, and relying on same, he continued in the employment of plaintiff. He demanded a judgment for $10,000. To the complaint the plaintiff (defendant below) answered, denying the averments of negligence on its part, and affirmatively charged this defendant with want of care for his safety, and by reason thereof the injury resulted; also, that it was one of defendant's duties to observe to roof of the mine and report any defect appearing to the superintendent of the mine, and that defendant knew of said defects prior to said injury, and the plaintiff had not such knowledge, and defendant failed to notify said plaintiff thereof; further, that defendant exposed himself to greater danger by riding on the coupling of the cars, because the jostling and shaking of the cars was liable to shake down the roof, that

the safer place to ride was where the rope was attached to the front cars; further it was not a part of defendant's duty or employment to ride out of the mine upon the cars, that there was an air passage upon either side of said slope suitable and sufficient for employes to pass in or out of the mine, and by reason thereof defendant assumed the risk of riding on the cars, and was therefore not entitled to recover. Upon these issues the cause was tried to a jury, which found a verdict for plaintiff below, against this plaintiff in error, for $5,000. Motion for new trial was filed by plaintiff in error which was overruled, and judgment was entered upon the verdict.

Plaintiff assigns 15 errors, but one of which is deemed necessary to consider, and that is the tenth assignment of error, which reads: "Tenth assignment of error. The court erred in rendering judgment upon the verdict of the jury for the reason that the judgment rendered is grossly excessive in amount." A careful examination of this record fails to show any evidence upon which the jury could properly allow more than nominal damages. There is nothing to show the length of time the defendant was unable to perform his usual labor; no evidence of what his wages were when injured, what he had ever earned or could earn, what money he had expended, or was rendered liable to pay because of said injuries; no direct evidence as to whether his injuries were permanent except one physician testified that on the night before the trial he had made a physical examination of the defendant, and this was some two years after the injury, that he found that two, and possibly three, of his ribs had been fractured, and his clavicle had been fractured, and in his opinion the injuries would impair his capacity for manual labor somewhat like a half. While the court instructed the jury at length, the only instruction as to measure of damages or amount of recovery was in the following words: "I want to say that if this injury occurred to the plaintiff by reason of the negligence of the defendant,

if you find that from the testimony, then the plaintiff would be entitled to recover, and you take into consideration, in ascertaining the amount of the recovery, all the testimony before you in regard to the injury, but if the defendant caused the injury, under the instructions I have given you—and I want you to take all the instructions given as one instruction, then it would be liable, notwithstanding the treatment of the collar bone was not the best by some doctor." Without evidence, and without direction from the court as to any rule, guide or measure for an estimation of damages, the jury was turned loose to wander at will, and find such verdict as its whim or fancy might suggest. It is unaccountable how a case of this character should be tried without any offer or attempt to prove any of the specific items of damages alleged in the complaint. It was in proof that defendant's working capacity was reduced one-half, and that his life expectancy by the mortality tables was 38.8 years; but all blank as to his earning capacity, all blank as to the number of days, weeks or months that were lost by reason of the injury; not a syllable as to the amount paid, laid out, and expended, or incurred, for doctors, nurses, and medicines, though it was in evidence that a doctor treated him.

It is clear that this judgment should be reversed, and cause remanded for further proceedings and trial.

Reversed and remanded.

GILL, C. J., and CLAYTON and TOWNSEND, JJ., concur.